**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ :
                                        :
UNITED STATES SECURITES AND             :
EXCHANGE COMMISSION,                    :
                                        :        Case No.
                                        :
            Plaintiff,                  :
                                        :        Judge
        vs.                             :
                                        :
CHINA INFRASTRUCTURE                    :
INVESTMENT CORPORATION,                 :
LI XIPENG and WANG FENG,                :
                                        :
            Defendants.                 :
_____:

**<u>COMPLAINT</u>**

For its Complaint, Plaintiff United States Securities and Exchange Commission (the

"Commission" or "SEC") alleges as follows:

**<u>SUMMARY OF THE ALLEGATIONS</u>**

1.      This matter involves a fraudulent scheme perpetrated by China Infrastructure

Investment Corporation ("CIIC"), its chief executive officer Li Xipeng ("Xipeng"), and its

corporate secretary Wang Feng ("Feng") (collectively "Defendants") to conceal the fact that

CIIC's chief financial officer ("CFO") had resigned.  Defendants filed with the SEC Forms 10-

K, 10-K/A, and 10-Q and other documents containing material omissions and misrepresentations

concerning CIIC's CFO and multiple forged signatures and certifications of the former CFO.

2.      On June 27, 2011, Xipeng hired Li Lei ("Lei") to serve as the CIIC's CFO.  On

September 21, 2011, less than three months after being hired, Lei sent a letter to Xipeng

resigning as CFO and director "for personal reasons."  The same day, Lei sent an email to an Independent Director on CIIC's audit committee (the "Independent Director"), corporate secretary Feng, CIIC's auditors, and CIIC's outside counsel resigning his positions, effective immediately.

3.      Immediately following his resignation, Lei stopped serving as CIIC's CFO, and he thereafter performed no duties whatsoever for CIIC.

4.      Despite Lei's unequivocal actions, within a week following Lei's resignation, Feng falsely informed the Independent Director that Lei had decided to continue as CFO for a transition period.

5.      CIIC filed multiple documents with the SEC in October and November 2011 identifying Lei as CIIC's CFO and purporting to contain his electronic signature.  These filings include CIIC's Form 10-K and Form 10-K/A for the period ending June 30, 2011, filed October 13, 2011 and November 14, 2011, respectively (the "Form 10-K" and the "Form 10-K/A"), and the first quarter 2012 Form 10-Q for the three months ending September 30, 2011, filed November 14, 2011 (the "Form 10-Q") (collectively, the "Filings").  For each of the Filings, Lei's electronic signature also appeared on the Officer's Certifications required by the Sarbanes Oxley Act of 2002 ("SOX").

6.      During this period, Xipeng and Feng knew that NASDAQ had decided to delist CIIC for failure to maintain a minimum share price of at least $1.00, and they knew that the company was appealing the delisting decision.

7.      Feng believed that public disclosure of the resignation of the CFO could have a negative impact on CIIC's share price, and thus forged Lei's electronic signature as part of a

scheme to create the false impression that CIIC continued to have a CFO.  Xipeng knew, or was extremely reckless in not knowing, about the scheme and the forgery of Lei's signature.

8.      CIIC's auditor during the relevant period was Weinberg and Co., P.A. ("Weinberg").  Weinberg was assisted by the Chinese accounting firm of K.P. Cheng and Co. ("Cheng").  Weinberg issued the 2011 audit opinion and conducted the 2012 first quarter review of CIIC, relying on management representation letters from CIIC that also contained Lei's forged signature.

9.      On November 28, 2011, Lei emailed the Independent Director noting that Lei's name still appeared on Yahoo! Finance as the CFO of CIIC and inquired if his resignation had been processed.  Lei also contacted NASDAQ to advise them that he had resigned as CIIC's CFO.

10.      On December 16, 2011, counsel for CIIC filed a Form 8-K (the "Form 8-K") reporting Lei's resignation and stating that CIIC's 2011 Form 10-K, Form 10-K/A and first quarter 2012 Form 10-Q, all of which purport to bear Lei's signature, had not been prepared, reviewed, signed or authorized by Lei.  The Form 8-K is the last form filed by CIIC.  CIIC has since been delinquent in its filings, which is itself a violation of the securities laws.

11.      As a result of the conduct described in this Complaint, Defendants violated and will continue to violate unless enjoined by this Court at least the following provisions of the federal securities laws:

    a.      All Defendants violated Section 10(b) of the Securities Exchange Act of
            1934 ("Exchange Act") [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder
            [*17 C.F.R. § 240.10b-5*];

b.      CIIC violated Exchange Act Section 13(a) [*15 U.S.C. § 78m(a)*] and Rules
        12b-20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.12b-20, 240.13a-1
        and 240.13a-13*];

c.      Xipeng and Feng violated Exchange Act Section 20(e) by knowingly and
        substantially assisting CIIC's violations of Exchange Act Section 10(b)
        and Rule 10b-5 thereunder, and Exchange Act Section 13(a) and Rules
        12b-20, 13a-1 and 13a-13 thereunder [*15 U.S.C. §§ 78j(b) and 78m(a) and
        17 C.F.R. §§ 10b-5, 12b-20, 13a-1 and 13a-1*].

d.      Xipeng and Feng violated Exchange Act Rule 13b2-2 [*17 C.F.R.
        § 240.13b2-2*];

e.      Xipeng violated Exchange Act Rule 13a-14 [*17  C.F.R. § 240.13a-14*];

f.      Xipeng, acting as a control person for CIIC, violated  Exchange Act
        Section 20(a) as a result of CIIC's violations of Exchange Act Sections
        10(b) and 13(a) and Rules 10b-5, 12b-20, 13a-1 and 13a-13 thereunder [*15
        U.S.C. §§ 78j(b) and 78m(a) and 17 C.F.R. §§ 10b-5, 12b-20, 13a-1 and
        13a-1*]; and

g.      Feng violated Exchange Act Section 20(e) by aiding and abetting
        Xipeng's violation of Rule 13a-14 [*17  C.F.R. § 240.13a-14*].

## **JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this action pursuant to Sections 21(d)(1),
21(d)(2), 21(d)(3)(A), 21(e), and 27 of the Exchange Act [*15 U.S.C. § 78u(d)(1), 78u(d)(2),
78u(d)(3)(A), 78u(e), and 78aa*] to enjoin such acts, practices, and courses of business, to

prohibit persons from acting as officers or directors, to obtain civil penalties, and for other appropriate relief.

13.     Each of the defendants, directly or indirectly, made use of the means or instruments of interstate commerce, or of the mails, of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

14.     Venue is proper in this district pursuant to Section 27 of the Exchange Act [*15 U.S.C. § 78aa*], because certain acts and omissions constituting violations of the federal securities laws alleged herein occurred within this judicial district, including without limitation, CIIC's filing of and failure to timely file its required reports with the Commission.

## THE DEFENDANTS

15.     **China Infrastructure Investment Corp. ("CIIC"),** incorporated in Nevada on January 11, 2001, is headquartered in Zhengzhou, Henan Province, The People's Republic of China, and operates exclusively in China. CIIC is registered with the Commission under Section 12(g) of the Exchange Act.  Through a series of holding companies, CIIC owns and operates the Pingdingshan Pinglin Expressway Co., Ltd. ("Ping"), which operates the Pingdingshan-Linru portion of the Pinglin Expressway.  Joylink Holdings Limited ("Joylink") owns 85% of the voting stock of CIIC. CIIC stock was traded on the NASDAQ stock exchange from 2008 until it was delisted on February 17, 2012.  CIIC is delinquent in it SEC filings.

16.     **Li Xipeng ("Xipeng")**, age 51, is a Chinese national and resident.  He has served as the Chief Executive Officer ("CEO") and Chairman of CIIC since 2008.  Xipeng is also the Chairman and legal representative for Ping.  Xipeng owns 50 percent of the stock of Joylink, which makes him the largest beneficial owner of CIIC stock.

17.     **Wang Feng ("Feng")**, age 41, is a Chinese national and resident.  He has served as the corporate secretary of CIIC since 2008 and of Ping since 2007.  Feng is listed in SEC filings as a certified public accountant in China.

## OTHER RELEVANT PERSONS AND ENTITIES

18.      **Li Lei ("Lei")** is a Chinese national and resident.  He served as CIIC's CFO and as a member of CIIC's Board of Directors from June 27, 2011 until September 21, 2011, when he resigned.

19.     **Weinberg and Co., P.A. ("Weinberg")**, is a PCAOB-registered accounting firm with headquarters in Boca Raton, Florida.  Weinberg was the principal auditor for CIIC beginning in 2008.

20.     **K.P. Cheng and Co. ("Cheng")**, is a PCAOB-registered accounting firm located in Wan Chai, Hong Kong and Shanghai, China.  Cheng was hired by Weinberg to conduct the field work on CIIC audits and reviews.  K.P. Cheng and Co. continued to perform the field work for Weinberg until Weinberg terminated its relationship with CIIC in February 2012.  Cheng played a substantial role in the audits of Weinberg's Chinese clients, including CIIC.

21.     **The Crone Law Group ("Crone")**, with offices in California and Beijing, China, represented CIIC during the preparation of CIIC's 2011 annual report.  CIIC terminated Crone's representation on September 27, 2011.

22.     **The Independent Director** is a citizen and resident of the United States.  He was born and had residences in China until 2004.  He served as an independent member of CIIC's Board of Directors from July 1, 2010 until June 30, 2012.

23.     **Loeb & Loeb LLP ("Loeb")**, with offices in California, Hong Kong, and Beijing, China, began representing CIIC after it terminated Crone in September 2011.

## FACTS

### *Background*

24.     CIIC is engaged in the investment, construction, operation and management of the Pinglin Expressway toll road and service stations along the toll road in the Henan Provence of central China.  Ping operates the Expressway, which became fully operational in 2006.  CIIC's revenue comes primarily from toll charges.

25.     CIIC listed its stock on NASDAQ in 2008.  CIIC traded under the ticker symbol "CIIC."

26.     On September 9, 2010, NASDAQ notified CIIC that its common stock had failed to maintain the required $1.00 minimum bid price.  CIIC was given 180 days to regain compliance, followed by a second 180-day period.

27.     During the relevant time period, Xipeng had control over CIIC business decisions and influenced votes on CIIC's Board of Directors.  Feng was CIIC's corporate secretary and served an administrative role that included getting the signatures of CIIC officers on SEC-required filings and correspondence.

28.     Li Lei was appointed CFO of CIIC effective June 27, 2011.  He was also a member of CIIC's Board of Directors.  Lei lived in Beijing, a far distance from CIIC's offices in Zhengzhou, and acted as CIIC's CFO on a part-time basis.  Lei was on site at CIIC infrequently.  He received no compensation from CIIC.

29.     On September 7, 2011, NASDAQ issued a decision delisting CIIC.  CIIC appealed the decision, and NASDAQ scheduled a hearing for October 27, 2011.  NASDAQ also requested additional information from CIIC, including information about the accounting treatment of certain non-performing loans in which Xipeng had a financial interest.

### *Lei's Resignation*

30.     After only three months as CFO and director of CIIC, Lei resigned from all of his positions at CIIC.  On September 21, 2011, Lei sent a letter to Xipeng and an email to the Independent Director, to Crone Law attorneys, to Cheng auditors and others resigning his positions, effective immediately, for personal reasons.

31.     On September 21, 2011, the same day Lei resigned, the Independent Director emailed Lei that legal counsel had advised him that CIIC needed to file a Form 8-K disclosing Lei's resignation by the following Tuesday (September 27).  Feng was copied on this email.

32.     Later the same day, Feng responded to the Independent Director's email to Lei and asked the Independent Director to tell counsel not to act.  In the email, Feng wrote: "We will have an internal discussion first."

33.     Two days later, on September 23, the Independent Director emailed Feng with a proposed resolution of the Board of Directors appointing an interim CFO.  In the email, the Independent Director reminded Feng of the need to timely file the Form 8-K with the SEC.

34.     On September 25, Feng emailed the Independent Director and advised him that CIIC was terminating the Crone firm, effective immediately.  Feng directed the Independent Director to send all legal work to Loeb.

35.     CIIC officially terminated its relationship with the Crone firm on September 27, the day the Form 8-K was due to be filed.

### *The Scheme to Conceal Lei's Resignation*

36.     On Monday, September 26, 2011, Feng asked the Independent Director via email to call him.  During this call, Feng told the Independent Director that Lei had decided to continue as CFO until the Form 10-K was filed.  The next day, Tuesday, September 27, 2011, Feng sent

8

an email to the Independent Director, Cheng audit staff, and Loeb attorneys, stating that the

"CFO is on sick leave in the hospital.  For the materials preparation me [and the Independent

Director]…will work on the details."

37.     On September 30, 2011, one week after Lei's resignation, CIIC sent a letter to

NASDAQ responding to its request for additional information.  Lei's electronic signature was on

the letter, but his signature was a forgery.  Lei did not sign the document, nor did he authorize

the use of his signature.

38.     NASDAQ held a hearing on October 27, 2011, and issued a final decision

delisting CIIC on February 17, 2012.

39.     Prior to NASDAQ's final decision, on October 10 and November 14, 2011, CIIC

sent the Weinberg audit firm management representation letters in connection with the June 30,

2011 audit and the September 30, 2011 first quarter review. Both representation letters bore the

handwritten signature of Xipeng and the forged handwritten signature of Lei.  Again, Lei did not

sign the document, nor did he authorize the use of his signature.

40.     Both representation letters also contained the material misrepresentation that the

signatories had no knowledge of any fraud affecting CIIC by management and that there had

been no violations of laws or regulations whose effect should be considered for disclosure in the

consolidated financial statements.

### *The False and Misleading Findings*

41.     Weinberg  relied on the October 10, 2011 representation letter in connection with

its audit of CIIC's consolidated financial statements contained in its 2011 Form 10-K, which was

filed on October 13, 2011.  Weinberg also relied on CIIC's  representation letter in connection

with its review of CIIC's condensed consolidated interim financial statements contained in

CIIC's first quarter 2012 Form 10-Q, which was filed along with its Form 10-K/A for 2011, on November 14, 2011.

42.     Both the Form 10-K and the Form 10-Q contained the signature of Xipeng and the forged signature of Lei.  Both the Form 10-K and the Form 10-Q also failed to disclose that: (1) Lei had resigned as CFO at the time of the filings, (2) CIIC had no CFO at the time of the filings, and (3) Lei had not authorized the use of his signature as CFO of CIIC.  Each of these omissions were material in that any reasonable investor would have considered the omitted information as significantly altering the total mix of available information about CIIC.

43.     Xipeng's signature on the Form 10-K and the Form 10-Q represented, falsely, that: (1) CIIC had a CFO at the time of the filings, (2) Lei was the CFO at the time of the filings, (3) Lei had authorized his signature on the filings, and (4) the CFO had concluded that CIIC's internal control over financial reporting as of June 30, 2011, was effective.  Again, each of these misstatements were material in that any reasonable investor would have considered the information important in determining whether or not to buy CIIC securities.

44.     At the time he signed these documents, Xipeng knew, or was reckless in not knowing, that Lei had resigned as CFO and that the Filings falsely portrayed CIIC as having a CFO.

45.     Indeed, at the time Xipeng signed CIIC's Forms 10-K, 10-K/A, and 10-Q, Lei had not been performing any of the duties of a CFO or member of the Board of Directors.

46.     Lei's electronic signature was also placed on the Officer's Certifications for CIIC required by SOX without Lei's authorization.

### *The Aftermath*

47.     The Independent Director had no contact with Lei between Lei's resignation date and November 28, 2011.  On November 28 the Independent Director received an email from Lei stating that he had not spoken with Xipeng since his resignation.   Lei further wrote that he found his name in CIIC's Yahoo! Finance company profile as CIIC's CFO and director.  Lei asked, "I just wonder if you guys have officially processed my resignation.  My name should not be there and should not be attached to the company."

48.     Following receipt of Lei's November 28 email, the Independent Director telephoned Feng and related his conversation with Lei.  Feng admitted forging Lei's signature on the Forms 10-K and 10-Q.  Feng told the Independent Director that Xipeng knew of Lei's resignation but did not accept it.  Feng further admitted that he forged Lei's signature because he did not want bad publicity from the CFO's resignation during the NASDAQ inquiry and annual report filing.

49.     The Independent Director recommended to Feng that Feng resign.  Feng, however, did not do so.

50.     The Independent Director next called a Loeb attorney and reported what Feng had told him.  On December 14, 2011, the Loeb attorney drafted a letter to CIIC's Board of Directors stating that they had been advised that Lei had resigned in September and was not involved in the preparation, review or signing of Company filings, and that Feng had signed Lei's name to the Filings without Lei's consent.

51.     On December 16, 2011, CIIC passed a Board Resolution authorizing an internal investigation by the audit committee with the assistance of Loeb.  On the same day, Loeb filed a Form 8-K on behalf of CIIC stating that Lei resigned on September 21, 2011, and "although the

Company did not accept Mr. [Lei's] resignation, Mr. [Lei] did not continue to perform his duties as [CFO]."

52.     The Form 8-K also represented that the Board learned on December 15 that CIIC's Forms 10-K, 10-K/A and 10-Q, all of which bear Lei's purported signature, had not been prepared, reviewed, signed or authorized by Lei.

53.     Although the Loeb firm was tasked with conducting an internal investigation, the investigation never took place.  CIIC was delinquent in the payment of Loeb's fees.

### FIRST CLAIM FOR RELIEF
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
(*Against Defendants CIIC, Xipeng, and Feng*)

54.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

55.     From at least September 21, 2011, as a result of the conduct alleged herein, Defendants knowingly, or with extreme recklessness, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, or a facility of a national securities exchange:

      a.     employed devices, schemes or artifices to defraud;

      b.     made untrue statements of material fact, omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.     engaged in acts, practices, or courses of business which operated  or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

56.     By engaging in the foregoing conduct, the Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*].

## SECOND CLAIM FOR RELIEF
### Violation of Exchange Act Section 13(a) and Rules 12b-20, 13a-1 and 13a-13 Thereunder
### (*Against Defendant CIIC*)

57.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

58.      CIIC, being an issuer registered pursuant to Section 12 of Title 15, failed to file with the Commission annual reports and quarterly reports, and include in the reports such material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made not misleading.

59.     Defendant CIIC filed materially false and misleading periodic reports, including annual and quarterly reports on Forms 10-K and 10-K/A for 2011 and on Form 10-Q for the first quarter of 2012, and failed to file with the Commission any annual or quarterly reports subsequent to these filings.

60.     By engaging in the foregoing conduct, Defendant CIIC violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act [*15 U.S.C. § 78m(a)*] and Rules 12b-20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13*].

## THIRD CLAIM FOR RELIEF
### Aiding and Abetting Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (*Against Defendants Xipeng and Feng*)

61.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

62.     As alleged herein, Defendants Xipeng and Feng knowingly or recklessly provided substantial assistance to Defendant CIIC's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

63.     Pursuant to Section 20(e) of the Exchange Act [*15 U.S.C. § 78t(e)*], Defendants Xipeng and Feng each aided and abetted, and unless restrained and enjoined will continue to aid and abet, violations of Section10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 [*17 C.F.R. § 240.10b-5*] thereunder.                    .

### FOURTH CLAIM FOR RELIEF
**Aiding and Abetting Violations of Exchange Act Section 13(a) and
Rules 12b-20, 13a-1 and 13a-13 Thereunder
(*Against Defendants Xipeng and Feng*)**

64.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

65.     As alleged herein, Defendants Xipeng and Feng knowingly or recklessly provided substantial assistance to Defendant CIIC's violation of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

66.     Pursuant to Section 20(e) of the Exchange Act [*15 U.S.C. § 78t(e)*], Defendants Xipeng and Feng each aided and abetted, and unless restrained and enjoined will continue to aid and abet, violations of  Section 13(a) of the Exchange Act [*15 U.S.C. § 78m(a)*] and Rules 12b-20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13*].

### FIFTH CLAIM FOR RELIEF
**Violations of Exchange Act Rule 13b2-2
(*Against Defendants Xipeng and Feng*)**

67.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

68.     Defendants Xipeng and Feng, each in his capacity as a director or officer, directly or indirectly, made or caused to be made materially false or misleading statements to an accountant, or omitted to state or caused another person to omit to state, material facts necessary

in order to make statements made, in light of the circumstances under which such statements

were made, not misleading to an accountant, in connection with (a) an audit, review or

examination of the financial statements of an issuer, or (b) the preparation or filing of a report

required to be filed with the Commission.

69.    Defendants Xipeng and Feng, by submitting management representation letters to

CIIC's auditors dated October 10, 2011 and November 14, 2011, containing the forged signature

of Li Lei as the CFO, materially mislead CIIC's auditors and omitted material information, that

is, to inform the auditors that CIIC did not have a CFO, all in connection with CIIC's annual

report for 2011 and first quarter report for 2012.

70.    By engaging in the foregoing conduct, Xipeng and Feng violated, and unless

restrained and enjoined will continue to violate, Exchange Act Rule 13b2-2 [*17 C.F.R.*

*§ 240.13b2-2*].

### SIXTH CLAIM FOR RELIEF
### Violation of Exchange Act Rule 13a-14
### (*Against Defendant Xipeng*)

71.    Paragraphs 1-53 are re-alleged and incorporated herein by reference.

72.    Defendant Xipeng, in his capacity as principal executive officer of CIIC, falsely

certified reports required to be filed under Section 13(a) of the Exchange Act [*15 U.S.C.*

*§ 78m(a)*] and required to be certified by Rule 13a-14 thereunder.

73.    Defendant Xipeng falsely certified that (1) CIIC's 2011 Forms 10-K, 10-K/A and

first quarter 2012 10-Q, did not contain any untrue statements of material fact or omit to state a

material fact necessary in order to make the statements made, in light of the circumstances under

which such statements were made, not misleading; and (2) that the signing officers had disclosed

to CIIC's auditors and the audit committee of the board of directors any fraud, whether or not

material, that involves management or other employees who have a significant role in the CIIC's

internal controls, when in fact Xipeng knew that the CFO's signature on the reports and

certifications had been forged and knew that CIIC did not have a CFO at the time of the

certifications.

74.     By engaging in the foregoing conduct, Defendant Xipeng violated, and unless

restrained and enjoined will continue to violate, Exchange Act Rule 13a-14 [*17 C.F.R.

§ 240.13a-14*].

## SEVENTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Exchange Act Rule 13a-14
### (*Against Defendant Feng*)

75.     Paragraphs 1-53 are re-alleged and incorporated herein by reference

76.     As alleged herein, Defendant Feng knowingly or recklessly provided substantial

assistance to Defendant Xipeng's violations of Rule 13a-14 [*17 C.F.R. § 240.13a-14*].

77.     Pursuant to Section 20(e) of the Exchange Act [*15 U.S.C. § 78t(e)*], Defendant

Feng aided and abetted, and unless restrained and enjoined will continue to aid and abet

Xipeng's violations of Rule 13a-14 [*17 C.F.R. § 240.13a-14*].

## EIGHTH CLAIM FOR RELIEF
### Control Person Liability Under Exchange Act Section 20(a)
### (*Against Defendant Xipeng*)

78.     Paragraphs 1-53 are re-alleged and incorporated herein by reference.

79.     In addition to his liability as described above, Defendant Xipeng is also liable as a

controlling person under Section 20(a) of the Exchange Act [*15 U.S.C. § 78t(a)*].

80.     As alleged herein, Defendant Xipeng is, or was at the time acts and conduct set

forth herein were committed, directly or indirectly, a person who controlled CIIC.  CIIC violated

Exchange Act Sections 10(b) and 13(a) [*15 U.S.C. §§ 78j(b) and 78m(a)*] and Rules 10b-5, 12b-

20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13*].

81.     As a person who controlled CIIC, Defendant Xipeng is jointly and severally liable, with and to the same extent as CIIC,  for violations of  Exchange Act Sections 10(b) and 13(a) [*15 U.S.C. §§ 78j(b) and 78m(a)*] and Rules 10b-5, 12b-20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13*].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Finding that the Defendants each violated the federal securities laws and the Commission Rules alleged in this Complaint;

### II.

Permanently enjoining Defendant CIIC from violating, directly or indirectly, Sections 10(b) and 13(a) of the Exchange Act [*15 U.S.C. §§ 78j(b) and 78m(a)*] and Rules 10b-5, 12b-20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13*];

### III.

Permanently enjoining Defendant Xipeng from violating, directly or indirectly, Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rules 10b-5, 13b2-2 and 13a-14 thereunder [*17 C.F.R. §§240.10b-5, 240.13b2-2, 240.13a-14*], from aiding and abetting violations of Sections 10(b) and 13(a) of the Exchange Act [*15 U.S.C. §§ 78j(b) and 78m(a)*] and Rules 10b-5, 12b-20, 13a-1 and 13a-13 thereunder [*17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13*], and from controlling, directly or indirectly, any person who violates Sections 10(b)

and 13(a) of the Exchange Act [*15 U.S.C. §§ 78j(b) and 78m(a)*] and Rules 10b-5, 12b-20, 13a-1

and 13a-13 thereunder [*17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13*];

**IV.**

Permanently enjoining Defendant Feng from violating, directly or indirectly , Section

10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rules 10b-5 and 13b2-2 thereunder [*17

C.F.R. §§ 240.10b-5 and 240.13b2-2*] and aiding and abetting violations of  Sections 10(b) and

13(a) of the Exchange Act [*15 U.S.C. §§ 78j(b) and 78m(a)*] and Rules 10b-5, 12b-20, 13a-1,

13a-13 and 13a-14 thereunder [*17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-13 and

240.13a-14*].

**V.**

Ordering Defendants CIIC, Xipeng and Feng to pay civil money penalties pursuant to

Section 21(d)(3) of the Exchange Act [*15 U.S.C. §78u(d)(3)*];

**VI.**

Permanently barring Defendants Xipeng and Feng from acting as officers or directors of

any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [*15

U.S.C. § 78l*] that is required to file reports under Section 15(d) of the Exchange Act [*15 U.S.C.

§ 78o(d)*] pursuant to Section 21(d)(2) of the Exchange Act [*15 U.S.C. § 78u(d)(2)*];

**VII.**

Retaining jurisdiction of this action for purposes of enforcing any final judgments and

orders; and

**VIII.**

Granting any and all such other and further relief as the Court may deem just and

appropriate.

## **JURY DEMAND**

Under Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated: March 3, 2015                              Respectfully submitted,


                                             _/s/ Stephan J. Schlegelmilch_____
                                             Stephan J. Schlegelmilch (Ohio No. 0073088)
                                             Melissa J. Armstrong
                                             U.S. SECURITIES AND EXCHANGE COMMISSION
                                             100 F Street, N.E.
                                             Washington, DC  20549
                                             202.551.4935 (Schlegelmilch)
                                             202.551.4724 (Armstrong)
                                             202.772.9292 (facsimile)
                                             schlegelmilchs@SEC.gov
                                             armstrongme@SEC.gov

                                             *Counsel for Plaintiff*