**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| UNITED STATES SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>CHINA INFRASTRUCTURE<br>INVESTMENT CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 15-cv-00307 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The United States Securities and Exchange Commission ("SEC") initiated this action,

under the Securities Exchange Act of 1934 ("Exchange Act"), against three defendants, China

Infrastructure Investment Corporation ("CIIC"), Li Xipeng, Chief Executive Officer ("CEO")

and Chairman of CIIC, and Wang Feng, Corporate Secretary of CIIC.  Corrected Compl. ("Corr.

Compl.") ¶¶ 11, 16–17, ECF No. 3.  The Corrected Complaint alleges that over the course of six

weeks, the defendants submitted three filings to the SEC, and one letter to NASDAQ, which

falsely represented that a person named Li Lei was the Chief Financial Officer ("CFO") of the

defendant CIIC, despite the fact that he had resigned.  *Id.* ¶¶ 37–46.  Shortly after the initiation of

this action, the defendants stopped paying fees to and communicating with defense counsel,

failed to respond to the SEC's discovery requests, and ignored several of this Court's Orders

compelling compliance with the defendants' obligations under the Federal Rules of Civil

Procedure.  The SEC now seeks default judgment pursuant to Federal Rules of Civil Procedure

16(f) and 37(b)(2)(A)(vi).  *See* Pl.'s Mot. Default J. Against Defs. CIIC, Xipeng, and Fang

1

("Pl.'s Mot."), ECF No. 21; Pl.'s Mem. Supp. Default J. Against Defs. CIIC, Xipeng, and Fang

("Pl.'s Mem."), ECF No. 21-1.[1]  For the reasons discussed below, default judgment is granted.

## I.     BACKGROUND

Summarized below is the factual and procedural background of this case.  The

background is based on the allegations in the Corrected Complaint, as supplemented by the

SEC's declaration and facts deemed admitted pursuant to this Court's October 27, 2015 Minute

Order.  *See* Min. Order (Oct. 27, 2015) ("Oct. 27, 2015 Min. Order"); Decl. of Stephen J.

Schlegelmilch in Supp. Pl.'s Mot. for Default J. Against Defs. CIIC, Xipeng, and Fang (Nov. 23,

2015) ("Schlegelmilch Decl. Supp. Default J."), Exs. 2–4 (the "CIIC Admis.," "Xipeng Admis.,"

and "Feng Admis.," respectively), ECF Nos. 22-2–22-4.[2]

### A.     Factual Background

The defendant CIIC, a Nevada corporation, is headquartered in Zhengzhou, Henan

Province, The People's Republic of China.  Corr. Compl. ¶ 15.  "Through a series of holding

companies," including Pingdingshan Pinglin Expressway Co., Ltd., CIIC "owns and operates" a

"portion of the Pinglin Expressway" in China.  *Id.*  "CIIC is registered with the [SEC] under

Section 12(g) of the Exchange Act," and "CIIC stock was traded on the NASDAQ stock

exchange from 2008 until it was delisted on February 17, 2012." *Id.*  The defendant Xipeng is a

fifty-one-year-old Chinese national and resident, who has served as both the CEO and Chairman

of CIIC since 2008. *Id.* ¶ 16.  Xipeng owns fifty percent of the stock of Joylink Holdings

Limited, which owns eighty-five percent of the voting stock of CIIC.  *Id.*  ¶¶ 15-16.  This makes

---

[1]     The Court notes that in the titles of the SEC's motion for default judgment and supporting documents, the defendant Wang Feng's name is misspelled "Wang Fang."
[2]     The SEC requested fifty-three admissions from each of the defendants and, in each set of requests for admissions, misnumbered the requests by numbering two requests for admission as "Request for Admission No. 32." Accordingly, the earlier-listed "Request for Admission No. 32" will be referred to as request for admission number 32.1 and the second-listed "Request for Admission No. 32" will be referred to as request for admission number 32.2.

Xipeng "the largest beneficial owner of CIIC stock." *Id.*  During this period, "Xipeng had

control over CIIC business decisions and influenced votes on CIIC's Board of Directors." *Id.* ¶

27.  The defendant Feng is a forty-one-year-old Chinese national and resident, and since 2008, he

has served as the Corporate Secretary of CIIC.  *Id.* ¶ 17.  His role "included getting the

signatures of CIIC officers on SEC-required filings and correspondence." *Id.* ¶ 27.

"On September 9, 2010, NASDAQ notified CIIC that its common stock had failed to

maintain the required $1.00 minimum bid price" and gave CIIC "180 days to regain compliance,

followed by a second 180-day period." *Id.* ¶ 26.  A year later, on September 7, 2011, NASDAQ

issued a decision to delist CIIC and the company appealed.  *Id.* ¶ 29.  NASDAQ then scheduled a

hearing for October 27, 2011 and requested additional information, including "the accounting

treatment of certain non-performing loans in which Xipeng had a financial interest." *Id.*  Both

the defendants Xipeng and Feng "knew that NASDAQ had decided to delist CIIC for failure to

maintain a minimum share price of at least $1.00, and they knew that the company was appealing

the delisting decision." *Id.* ¶ 6.

Prior to the NASDAQ delisting decision and appeal, Lei, who is not a party to this action,

was appointed to the position of CFO of CIIC, effective June 27, 2011.  *Id.* ¶¶ 2, 28.  Lei also

served as a member of CIIC's Board of Directors.  *Id.* ¶ 28.  Only three months after he was

hired, on September 21, 2011, Lei resigned from all of his positions at CIIC, effective

immediately, in a letter to the defendant Xipeng citing "personal reasons." *Id.* ¶¶ 2, 30;

Schlegelmilch Decl. Supp. Default J. ¶ 12; *see also* CIIC Admis., No. 3; Xipeng Admis., No. 3;

Feng Admis., No. 3.  Lei also sent an e-mail communicating his resignation to the defendant

Feng, the Independent Director on the defendant CIIC's audit committee, CIIC's outside auditor,

and its legal counsel, the Crone Law Group, resigning his positions.  Corr. Compl. ¶ 30; *see also*
Schlegelmilch Decl. Supp. Default J., Ex. 6, ECF No. 22-6.

       In response to Lei's resignation, that same day, the Independent Director e-mailed Lei,
copying the defendant Feng, to report that "legal counsel had advised him that CIIC needed to
file a Form 8-K disclosing Lei's resignation by the following Tuesday (September 27)."  Corr.
Compl. ¶ 31; *see also* Schlegelmilch Decl. Supp. Default J., Ex. 6.  Feng asked the Independent
Director to tell the legal counsel not to act, stating: "We will have an internal discussion first."
Corr. Compl. ¶ 32.  On September 23, "the Independent Director emailed Feng with a proposed
resolution of the Board of Directors appointing an interim CFO" and reminding the defendant
Feng of the need to file the Form 8-K with the SEC.  *Id.* ¶ 33.  On September 26, 2011, "Feng
told the Independent Director that Lei had decided to continue as CFO until the Form 10-K was
filed."  *Id.* ¶ 36; *see also* Feng Admis., No. 26.  The next day, Feng sent an e-mail to the
Independent Director, the outside auditor, and defendant CIIC's *other* legal counsel, Loeb &
Loeb LLP ("Loeb"), writing falsely that the "CFO is on sick leave in the hospital."  Corr. Compl.
¶ 36; *see also* Feng Admis., Nos. 27–28.  That same day, CIIC terminated its relationship with
the Crone Law Group.  Corr. Compl. ¶ 35.

       On September 30, 2011, "CIIC sent a letter to NASDAQ responding to its request for
additional information."  *Id.* ¶ 37; Schlegelmilch Decl. Supp. Default J., Ex. 7 ("NASDAQ
Letter"), ECF No. 22-7.  Despite the fact that Lei had resigned the week prior, "Lei's electronic
signature was on the letter."  Corr. Compl. ¶ 37; NASDAQ Letter at 2.  "Lei did not sign the
document, nor did he authorize the use of his signature."  Corr. Compl. ¶ 37; *see also* CIIC
Admis., Nos. 29, 32.1, 31–32.2; Xipeng Admis., Nos. 29, 32.1, 31–32.2; Feng Admis., Nos. 29,

32.1, 31–32.2.  On October 27, 2011, NASDAQ held the scheduled hearing, and on February 17,

2012, issued its final decision delisting the defendant CIIC.  Corr. Compl. ¶ 38.

On October 10 and November 14, 2011, CIIC sent Weinberg and Co., P.A.

("Weinberg"), the company's the principal auditor, "management representation letters in

connection with the June 30, 2011 audit and the September 30, 2011 first quarter review."  *Id.* ¶

39; Schlegelmilch Decl. Supp. Default J., Exs. 8–9 ("Oct. 10, 2011 Letter" and "Nov. 14, 2011

Letter," respectively), ECF Nos. 22-8–22-9.  The representation letters contained the defendant

Xipeng's handwritten signature and Lei's forged signature.  Corr. Compl. ¶ 39; Oct. 10, 2011

Letter at 6; Nov. 14, 2011 Letter at 4.  "Again, Lei did not sign the document, nor did he

authorize the use of his signature."  Corr. Compl. ¶ 39; *see also* CIIC Admis., Nos. 36–43;

Xipeng Admis., Nos. 36–43; Feng Admis., Nos. 36–43.  Further, these letters "contained the

material misrepresentation that the signatories had no knowledge of any fraud affecting CIIC by

management and that there had been no violations of laws or regulations whose effect should be

considered for disclosure in the consolidated financial statements."  Corr. Compl. ¶ 40; Oct. 10,

2011 Letter at 2–3; Nov. 14, 2011 Letter at 2–3.

"Weinberg relied on the October 10, 2011 representation letter" signed by the defendant

Xipeng and (purportedly) Lei in conducting the audit of "CIIC's consolidated financial

statements" for the 2011 10-K filed on October 13, 2011.  Corr. Compl. ¶ 41; Schlegelmilch

Decl. Supp. Default J., Ex. 10 ("Form 10-K"), ECF No. 22-10.  Additionally, Weinberg relied on

CIIC's representation letter in connection with "its review of CIIC's condensed consolidated

interim financial statements contained in CIIC's first quarter 2012 Form 10-Q, which was filed

along with its Form 10-K/A for 2011, on November 14, 2011."  Corr. Compl. ¶ 41;

Schlegelmilch Decl. Supp. Default J., Exs. 11–12 ("Form 10-Q" and "Form 10-K/A," respectively), ECF Nos. 22-11–22-12.

The Form 10-K, Form 10-Q, and Form 10-K/A filed with the SEC contained Xipeng's signature and the forged signature of Lei.  *See* Corr. Compl. ¶ 42;[3] Form 10-K at 70; Form 10-Q at 55; Form 10-K/A at 6; *see also* CIIC Admis., Nos. 12–24; Xipeng Admis., Nos. 12–24; Feng Admis., Nos. 12–24.  These filings "failed to disclose that: (1) Lei had resigned as CFO at the time of the filings, (2) CIIC had no CFO at the time of the filings, and (3) Lei had not authorized the use of his signature as CFO of CIIC."  Corr. Compl. ¶ 42; *see, e.g.*, Form 10-K at 52 (listing Li Lei as the Chief Financial Officer and Director).  The "omissions were material in that any reasonable investor would have considered the omitted information as significantly altering the total mix of available information about CIIC."  Corr. Compl. ¶ 42.

Further, all of these filings with the SEC contained the defendant Xipeng's signature, *see* Form 10-K at 70; Form 10-Q at 55; Form 10-K/A at 6, and thus "represented, falsely that: (1) CIIC had a CFO at the time of the filings, (2) Lei was the CFO at the time of the filings, (3) Lei had authorized his signature on the filings, and (4) the CFO had concluded that CIIC's internal control over financial reporting as of June 30, 2011, was effective."  Corr. Compl. ¶ 43.  "At the time Xipeng signed CIIC's Forms 10-K, 10-K/A, and 10-Q, Lei had not been performing any duties as a CFO or member of the Board of Directors" and "Xipeng knew, or was reckless in not knowing, that Lei had resigned as CFO and that the [f]ilings falsely portrayed CIIC as having a CFO."  *Id.* ¶¶ 44–45; *see also* Xipeng Admis., Nos. 3–17, 31–32.1, 45, 47, 49.  Finally, without his authorization, Lei's electronic signature was placed on the Officer's Certifications in each of

---

[3]      Paragraphs 42–43 of the Corrected Complaint refer solely to the Form 10-K and 10-Q.  In conjunction with the exhibits submitted, the Court understands these allegations to refer also to the Form 10-K/A which amends the Form 10-K.

these filings, as required by the Sarbanes-Oxley Act of 2002.  Corr. Compl. ¶¶ 5, 46; Form 10-K

at 112, 115; Form 10-Q at 58, 60; Form 10-K/A at 9, 12; *see also* CIIC Admis., Nos. 51–52;

Xipeng Admis., Nos. 51–52; Feng Admis., Nos. 51–52.

On November 28, 2011, Lei contacted the Independent Director for the first time since

his resignation.  By e-mail, Lei informed the Independent Director that he "found his name in

CIIC's Yahoo! Finance company profiles as CIIC's CFO and director."  Corr. Compl. ¶ 47.

Further, Lei stated that, after his resignation, he had not spoken with the defendant Xipeng.  *Id.*

Lei wrote to the Independent Director, "I just wonder if you guys have officially processed my

resignation. My name should not be there and should not be attached to the company."  *Id.*

After receiving this e-mail, the Independent Director telephoned the defendant Feng, who

"admitted forging Lei's signature on the Forms 10-K and 10-Q" because "he did not want bad

publicity from the CFO's resignation during the NASDAQ inquiry and annual report filing."  *Id.*

¶ 48; *see also* CIIC Admis., No. 53; Xipeng Admis., No. 53; Feng Admis., No. 53.  "Feng told

the Independent Director that Xipeng knew of Lei's resignation but did not accept it."  Corr.

Compl. ¶ 48.  "The Independent Director recommended to Feng that Feng resign."  *Id.* ¶ 49.

Next, the Independent Director called CIIC's legal counsel, Loeb, and reported Feng's

admitted forgery.  *Id.* ¶ 50.  On December 16, 2011, Loeb filed a Form 8-K with the SEC on

behalf of CIIC stating that "Lei resigned on September 21, 2011, and 'although the Company did

not accept Mr. [Lei's] Resignation, Mr. [Lei] did not continue to perform his duties as [CFO].'"

*Id.* ¶ 51 (quoting Schlegelmilch Decl. Supp. Default J., Ex. 13 ("Form 8-K"), ECF No. 22-13).

The Form 8-K further represented that "the Board learned on December 15 that CIIC's Form 10-

K, 10-K/A and 10-Q, all of which bear Lei's purported signature, had not been prepared,

reviewed, signed or authorized by Lei."  Corr. Compl. ¶ 52.  CIIC was delinquent in paying

Loeb's fees but nevertheless Loeb was tasked with conducting an internal investigation, which never took place. *Id.* ¶ 53.

Since Loeb filed the Form 8-K on December 16, 2011, CIIC has been "delinquent in its filings, which is itself a violation of the securities laws." *Id.* ¶ 10; Schlegelmilch Decl. Supp. Default J. ¶ 16 (declaring that the October 13, 2011 Form 10-K and the November 14, 2011 10-Q were the last Form 10-K and Form 10-Q filed on behalf of defendant CIIC as of November 20, 2015).

### B.    Procedural History

On March 3, 2015, the SEC filed this lawsuit against the defendants, alleging eight counts of securities fraud, namely, that: (1) the defendants CIIC, Xipeng, and Feng violated the Exchange Act Section 10(b) and Rule 10b-5; (2) the defendant CIIC violated the Exchange Act Section 13(a) and Rules 12b-20, 13a-1 and 13a-13; (3) the defendants Xipeng and Feng aided and abetted violations of the Exchange Act Section 10(b) and Rule 10b-5; (4) the defendants Xipeng and Feng aided and abetted violations of the Exchange Act Section 13(a) and Rules 12b-20,13a-1 and 13a-13; (5) the defendants Xipeng and Feng violated the Exchange Act Rule 13b2-2; (6) the defendant Xipeng violated the Exchange Act Rule 13a-14; (7) the defendant Feng aided and abetted violations of the Exchange Act Rule 13a-14; and (8) the defendant Xipeng is liable as a "control person" under the Exchange Act Section 20(a).  Corr. Compl. ¶¶ 54–81; *see also* Compl., ECF No. 1.

On March 20, 2015, pursuant to the SEC's *ex parte* motion, Pl.'s Mot. For Leave to Serve Defs. Xipeng and Feng by Alternative Means, ECF. No. 5, the SEC was granted leave to serve the Corrected Complaint, Summons, and Standing Order on the defendants Xipeng and Feng, both residents of China, by alternative means.  Order (March 20, 2015) ("March 20, 2015

Order") at 2, ECF No. 6.  Defendant CIIC was subsequently served on March 23, 2015, by

serving Gateway Enterprises, Inc., CIIC's registered agent.  Notice of Service on Def. CIIC, ECF

No. 8.  The defendants Xipeng and Feng were served, in accordance with the Court's March 20,

2015 Order, on March 26, 2015, by e-mail and by serving Gateway Enterprises, Inc.  Decl. of

Stephen J. Schlegelmilch in Supp. of Pl.'s Notice of Service by Alternative Means ¶¶ 2–9, ECF

No. 7-1.

On April 15, 2015, counsel entered an appearance for the defendant CIIC and filed an

answer on its behalf.[4]  Notice of Appearance, ECF. No. 9; Answer ("CIIC Answer"), ECF No.

10.  The defendants Xipeng and Feng filed their answer on April 29, 2015.  *See* Answer

("Xipeng and Feng Answer"), ECF No. 12.  Thereafter, the parties submitted a Joint Meet and

Confer Report, ECF No. 13, and on June 2, 2015, the Court entered a Scheduling Order requiring

Rule 26 disclosures to be exchanged by June 16, 2015, any additional parties to be joined, and

any pleadings to be amended, no later than June 16, 2015, and all discovery to be closed by June

1, 2016.  Min. Order (June 2, 2015) ("June 2, 2015 Min. Order").  As required, the defendants

filed their Rule 26 disclosures on June 16, 2015.  Defs.' Initial Disclosures Pursuant to Rule

26(a)(1), ECF No. 15.

From that point forward, the defendants become unresponsive.  "On July 13, 2015, [the

SEC] served by e-mail to the defendants' counsel requests for admission, interrogatories, and

requests for production of documents."  Pl.'s Mot. Compel and Deem Admitted Pl.'s Req.

Admis. ("Pl.'s Mot. Compel") at 3, ECF No. 16; *see also* Decl. of Stephen M. Schlegelmilch in

---

[4]       Though defense counsel did not enter an appearance on behalf of the defendants Xipeng and Feng, he did
file documents with this Court on their behalf.  *See* Answer ("Xipeng and Feng Answer"), ECF No. 12 ("listing in
the signature block Edward B. MacMahon, Jr. as "Counsel for Counsel for [sic] Li Xipeng and Wang Feng").
Accordingly, this Court finds Xipeng and Feng to have been represented from April 29, 2015 to September 17, 2015
when this Court granted defense counsel's motion to withdraw.  *See* Min. Order (Sept. 17, 2015) ("Sept. 17, 2015
Min. Order").

Supp. of Pl.'s Mot. Compel and to Deem Admitted Req. for Admis. ("Schlegelmilch Decl. Supp. Mot. Compel") ¶¶ 3–5, ECF No. 16-2.  Included in this discovery request were fifty-three requests for admission, fewer than ten interrogatories, and seventeen requests for production of documents to each defendant.  *Id.*, Exs. 2–4 (Xipeng); *id.*, Exs. 5–7 (Feng); *id.*, Exs. 8–10 (CIIC).  The SEC also requested that the defendants provide information regarding their availability for depositions.  *Id.*, Ex. 11.  The defendants' counsel responded that "I have not heard from my clients in a while and will update you on that status when I can."  *Id.*, Ex. 12 at 1. The defendants failed to respond to any of the discovery requests or to provide deposition dates. *Id.* ¶¶ 7–8.  As a result, on August 27, 2015, the SEC moved to compel the defendants to respond to its interrogatories and requests for production of documents, and to deem admitted each of the SEC's pending requests for admission.  Pl.'s Mot. Compel, ECF No. 16.

On this same day, the defendants' counsel moved to withdraw due to the defendants' "fail[ure] to honor their continuing obligations under a written retainer agreement."[5]  Mot. to Withdraw as Att'y ¶ 2, ECF No. 17.  Over a week later, on September 11, 2015, counsel for the defendants filed a response to the SEC's discovery motion, requesting a stay of consideration of the SEC's motion pending resolution of defense counsel's motion to withdraw.  Defs.' Resp. to Pl.'s Mot. Compel and Deem Admitted Pl.'s Req. Admis., ECF No. 19.  Counsel noted, "Counsel cannot, without input and direction from his clients, make proper responses to any of the discovery that has been filed."  *Id.* at 1–2.

---

[5]      In defense counsel's motion to withdraw, defense counsel certified pursuant to Local Rule 83.6(c) that he delivered to the defendants a copy of the motion to withdraw, and notified and advised the defendants that they "should obtain other counsel."  Mot. to Withdraw as Att'y at 3, ECF No. 17.  Defense counsel further advised that "if the defendants desire to conduct the case pro se [sic] or if they desire to object to the requested withdrawal, they shall have seven days to notify the Court in writing as to how they desire to proceed or otherwise object to the withdrawal."  *Id.*  The defendants did not respond.

Shortly thereafter, on September 17, 2015, defense counsel's motion to withdraw was granted and the defendants were ordered to notify the Court as to "whether they have obtained other counsel and/or whether the individual defendants intended to proceed *pro se*" by September 24, 2015.  Min. Order (Sept. 17, 2015) ("Sept. 17, 2015 Min. Order").  The Court cautioned the defendants that corporate entities are not permitted to appear *pro se* and that, absent counsel, default judgment may be entered against the corporate defendant.  *Id.* (citing *Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998)).

The defendants failed to respond to the September 17, 2015 Minute Order. Consequently, on October 1, 2015, the defendants were ordered to show cause by October 8, 2015: "(1) why the defendants have failed to comply with this Court's September 17, 2015 Minute Order, which requires the defendants to file a notice by September 24, 2015; and (2) why the Court should not grant as conceded the plaintiff's motion to Compel Responses to Interrogatories and Document Requests and to Deem Admitted Requests for Admission."  Min. Order (Oct. 1, 2015) ("Oct. 1, 2015 Minute Order").  The SEC sent copies of the October 1, 2015 Minute Order to the defendants by e-mail.  Schlegelmilch Decl. Supp. Default J., Ex. 1, ECF No. 22-1.  Again, the defendants failed to respond, and on October 27, 2015, the Court granted as conceded the SEC's motion to compel—deeming admitted the SEC's requests for admission and directing the defendants to respond to the SEC's July 13, 2015 interrogatories and requests for production of documents by November 6, 2015.  Oct. 27, 2015 Min. Order.

In the October 27, 2015 Minute Order, the Court expressly warned the defendants that noncompliance with the Court's Orders would result in default judgment: "[F]ailure to comply with the Court's Orders will result in the Court rendering default judgment against the defendants pursuant to Federal Rule of Civil Procedure 16(f)(1) and 37(b)(2)(A)(vi)."  Oct. 27,

2015 Min. Order.  The SEC sent copies of the Oct. 27, 2015 Minute Order to the defendants by

e-mail.  Schlegelmilch Decl. Supp. Default J., Ex. 5, ECF No. 22-5.

The defendants failed to comply with the Court's Order to provide responses to the

SEC's July 13, 2015 written discovery.  Schlegelmilch Decl. Supp. Default J. ¶ 11.  On

November 23, 2015, the SEC filed a motion for default judgment under Federal Rules of Civil

Procedure 16(f) and 37(b)(2)(A)(vi) as to all the defendants.  *See* Pl.'s Mot.  The defendants have

not submitted any response to this pending motion for default judgment or otherwise attempted

to communicate with the Court.

Further, just last week, on May 19, 2016, the SEC filed a Status Report as required by the

Court in the June 2, 2015 Minute Order.  *See* Pl.'s Status Report, ECF No. 23; *see also* June 2,

2015 Min. Order.  The SEC attempted to contact the defendants in order to submit a "joint"

status report, but, yet again, the defendants did not respond.  *See* Pl.'s Status Report at 1.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(b)(2), the Court may order sanctions, including

default judgment, for failure to obey a discovery order.[6]  FED. R. CIV. P. 37(b)(2)(A)(vi).  As

articulated in *Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998), the D.C. Circuit

recognizes three basic justifications supporting default judgment as a discovery sanction.  *See*

*also Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 4–5

(D.C. Cir. 2015) (restating justifications).  First, the Court may determine that the "errant party's

behavior has severely hampered the other party's ability to present his case."  *Webb*, 146 F.3d at

---

[6]     Federal Rule of Civil Procedure 16(f)(1)(C) similarly authorizes the Court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C).  Although the SEC's arguments focus on the defendants' failure to produce discovery as warranting sanctions under Rule 37, the Court notes that the defendants' failure to comply with the Court's requirements and deadlines in the June 2, 2015 Minute Order, the September 17, 2015 Minute Order, and the October 27, 2015 Minute Order also warrant sanctions under Rule 16(f)(1)(C).

971 (citing *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074 (D.C. Cir. 1986)).  Second, the

Court "may take account of the prejudice caused to the judicial system when the party's

misconduct has put 'an intolerable burden on a district court by requiring the court to modify its

own docket and operations in order to accommodate the delay.'"  *Id.* (quoting *Shea*, 795 F.2d at

1075).  Third, the Court "may consider the need 'to sanction conduct that is disrespectful to the

court and to deter similar misconduct in the future.'"  *Id.* (quoting *Shea*, 795 F.2d at 1077.)  "A

default judgment is inappropriate unless the litigant's misconduct is accompanied by

'willfulness, bad faith, or fault.'"  *Wash. Metro. Area Transit Comm'n*, 776 F.3d at 4 (quoting

*Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1458 (D.C. Cir. 1986)).

   "Though there is a 'strong presumption in favor of adjudications on the merits,'"

*Carazani v. Zegarra*, 972 F. Supp. 2d 1, 11 (D.D.C. 2013) (quoting *Shepherd v. ABC*, 62 F.3d

1469, 1475 (D.C. Cir. 1995)), default judgment is appropriate where defendants are "'essentially

unresponsive part[ies]'" whose defaults are "'plainly willful, reflected by [their] failure to

respond to the summons and complaint, the entry of default, or the motion for default

judgment.'"  *Id.* (citations omitted); *see also Wash. Metro. Area Transit Comm'n*, 776 F.3d at 6

(affirming default judgment where defendant argued that he was not participating in discovery

because he was applying for a license at issue in the suit, and noting that "[l]itigants cannot pick

and choose the legal proceedings they want to participate in at any given time.").  Default

judgment is the "'sanction of last resort,' to be used only when less onerous methods (for

example, adverse evidentiary determinations or other 'issue-related sanctions') will be

ineffective or obviously futile."  *Webb*, 146 F.3d at 971 (quoting *Shea*, 795 F.2d at 1075).

Accordingly, to grant default judgment, the Court must find "clear and convincing evidence of

misconduct" and "provide a specific, reasoned explanation for rejecting lesser sanctions, such as fines, attorneys' fees, or adverse evidentiary rulings." *Shepherd v. ABC*, 62 F.3d at 1478.

"A defaulting defendant concedes all well-pleaded factual allegations as to liability, though the court may require additional evidence concerning damages." *Al-Quraan v. 4115 8th St. NW, LLC*, 123 F. Supp. 3d 1, 1 (D.D.C. 2015); *see also Carazani*, 972 F. Supp. 2d at 12 ("Although default judgment establishes the defaulting party's liability for every well-pleaded allegation in the complaint, it does not automatically establish liability in the amount claimed by the plaintiff."). "[U]nless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (entering default judgment under Federal Rule of Civil Procedure 55(a)). "[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *see also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (where damages were "not liquidated or capable of mathematical calculation," they "should not have been awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts"); *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (finding a similar independent determination to be "applicable to the granting of an injunction, which is appropriately entered only after the exercise of a court's discretion, and upon a finding of the likelihood that the defendant would commit future violations if not enjoined").

## III.  DISCUSSION

The Court addresses the defendants' default before turning to the judgment that will be entered in this case.[7]

### A.  Default

Default may be entered pursuant to Federal Rule of Civil Procedure 37(b)(2) when: (1) a party has failed to obey an order to provide or permit discovery; (2) one of the three *Webb* justifications for use of default judgment as a sanction has been met; and (3) lesser sanctions will not adequately deter and punish the misconduct.[8]  *Webb*, 146 F.3d at 971; *Shepherd*, 62 F.3d at 1478–79.  The Court addresses each of these requirements *seriatim* below.

---

[7]        The procedural posture of a default does not relieve a federal court of its "affirmative obligation" to determine whether subject matter and personal jurisdiction may be exercised by the Court.  *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996); *see also FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008) ("The plaintiffs have the burden of establishing the court's personal jurisdiction over [the defendants]."); *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) ("[T]he party claiming subject matter jurisdiction . . . has the burden to demonstrate that it exists."); *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) ("entry of a default judgment is not automatic").  All jurisdictional requirements are met here.  First, this Court properly exercises subject-matter jurisdiction, pursuant to 15 U.S.C. § 78u(d)(1)–(3) and (e), which provide authority to the United States District Court for the District of Columbia to enjoin acts or practices constituting a violation of any provision of the Exchange Act, to prohibit persons from serving as officers or directors, to impose civil penalties, and to issue writs of mandamus, injunctions, or orders requiring compliance with the Exchange Act and the rules thereunder.  Second, venue is proper, pursuant to 15 U.S.C. § 78aa, which provides that "[a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules or regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business."  *See SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 n. 12 (D.C. Cir. 1978) (filings with the SEC occur as a matter of law in the District of Columbia).  Finally, although the defendant CIIC is incorporated in Nevada and the defendants Xipeng and Feng are residents of China, the Court has personal jurisdiction over the defendants because their activities are directed at the SEC.  "Numerous circuits have 'uniformly held that when the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States.'"  *SEC v. e-Smart Techs., Inc.*, 926 F. Supp. 2d 231, 236 (D.D.C. 2013) (alternation omitted) (quoting *SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997)); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1029 (9th Cir. 2009) (under the Exchange Act, any federal court has personal jurisdiction over a defendant with minimum contacts with United States).  Where a person has "'purposefully directed' his activities at the residents of the forum," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)), such as filing statements with the SEC, and the court proceeding results from alleged injuries that "'arise out of or relate to' those activities," the minimum contacts required by the Constitution are satisfied, *id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Accordingly, the defendants CIIC, Xipeng, and Feng's actions of submitting false information to the SEC support the exercise of personal jurisdiction over the defendants in this lawsuit.

[8]        As noted above, defense counsel moved to withdraw on August 27, 2015 due to his clients' "fail[ure] to honor their continuing obligations under a written retainer agreement."  Mot. to Withdraw as Att'y ¶ 2.  The Court granted this motion on September 17, 2015 and copies of the September 17, 2015 Minute Order were mailed to the

1.      ***Defendants Have Violated Every Court Order Since September 17, 2015***

The Court may impose sanctions under Rule 37(b)(2) when a party has violated a

production order issued by the Court.  *Webb*, 146 F.3d at 972 n.16.  In the instant case, the

defendants' violation of the last three Court Orders, the most recent of which expressly

compelled the defendants to respond to the SEC's interrogatories and requests for production of

documents, triggers the Court's authority to impose sanctions.  *Carazani*, 972 F. Supp. 2d at 13–

15 (entering default judgment where the defendant repeatedly failed to obey court orders to

permit discovery, including a scheduling and procedures order, an order for hearing, an order to

compel, and an order for a joint status report).  Specifically, the September 17, 2015 Minute

Order required the defendants to notify the Court by the following week as to whether they had

obtained new counsel and/or whether the individual defendants intended to proceed *pro se*.  Sept.

17, 2015 Minute Order.  The defendants failed to respond.  The October 1, 2015 Minute Order

required the defendants to explain why they failed to comply with the September 17, 2015

Minute Order and explain why the Court should not grant as conceded the SEC's motion to

compel discovery responses by October 8, 2015.  Oct. 1, 2015 Min. Order.  Again, the

defendants failed to respond.  The October 27, 2015 Minute Order required the defendants to

respond to the SEC's interrogatories and requests for production of documents by November 6,

2015.  Oct. 27, 2015 Min. Order.  Yet again, the defendants failed to respond.

The Court expressly warned the defendants regarding its intention to enter default

judgment if met with noncompliance.  *See* Oct. 27, 2015 Min. Order.  Even so, the defendants

---

now *pro se* parties.  Defendant CIIC's failure to obtain new counsel—despite the Court's warning in the September 17, 2015 Minute Order—is itself grounds for this Court to enter default judgment with respect to the corporate defendant.  *See Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998) ("[A corporation] must be represented by counsel or it will be treated as not having appeared at all, and default judgment may be entered against it.").

continue to remain absent over six months later.  *See* Schlegelmilch Decl. Supp. Default J. ¶ 11.

Nothing suggests to this Court that the defendants have any intention of rectifying their ongoing

violations of this Court's last three Orders.  Accordingly, the Court finds by clear and convincing

evidence that the defendants have violated a production order issued by this Court.

### 2.    *The Defendants' Complete Disregard for the Court's Orders Justifies Default Judgment*

Under any one of the three-alternative bases set forth in *Webb*, the defendants' total

disregard for the Court's Orders justifies default judgment.  First, the defendants' conduct has

severely prejudiced the SEC's ability to obtain discovery related to its claims and the relief

sought.  *Webb*, 146 F.3d at 971.  The defendants' failure to respond to the SEC's requests for

interrogatories and production of documents, served on July 13, 2015, and ultimately due on

November 16, 2015, has hampered the SEC's ability to present its case on the merits.  *See Perez*

*v. Berhanu*, 583 F. Supp. 2d 87, 91 (D.D.C. 2008) ("Plaintiffs are unable to present their case for

a merits resolution without any discovery from defendants; no such discovery is possible in the

face of defendants' failure to respond to discovery requests or orders of this Court.").  Second,

the defendants' conduct has unreasonably delayed this case.  *Webb*, 146 F.3d at 971.  The

defendants' refusal to respond to these discovery requests, in violation of this Court's October

27, 2015 Minute Order, have completely stalled litigation.  The defendants have already missed

three Court-ordered deadlines, and are approaching the June 1, 2016 fact-discovery deadline

(without producing any requested discovery).  *See* June 2, 2015 Min. Order.  The defendants

simply continue to remain absent without any sign of re-engaging in this lawsuit.  *See Mwani v.*

*bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (affirming default judgment under Federal Rule of

Civil Procedure 55 where "the adversary process has been halted because of an essentially

unresponsive party").  Third, the defendants' behavior has demonstrated a disrespect for the

Court and a need to deter future misconduct.  The complete refusal to respond to this Court's last

three Orders, and to participate in the case in any manner since the defense counsel's final

submission on September 11, 2015, demonstrates a disrespect for the Court's deadlines and a

need to deter further noncompliance.  *See Perez*, 583 F. Supp. 2d at 91 ("The extreme disregard

defendants have shown for their discovery obligations and the schedule set by this Court shows

that a court order to comply with deadlines or to take some other corrective action is unlikely to

deter future misconduct.").

### 3.    *Lesser Sanctions Would Not Be More Appropriate*

Where, as here, the defendants have ignored numerous orders by the Court, and the

Court's express warning of default judgment, no lesser sanction is warranted.  To merit default

judgment, "the party typically has engaged in a pattern of disobedience or noncompliance with

court orders . . . and the noncompliance most often has prejudiced the opposing party, so that the

court concludes that no lesser sanction is warranted."  CHARLES ALAN WRIGHT ET AL., 6A

FEDERAL PRACTICE AND PROCEDURE § 1531 (3d ed. 2016) (discussing Federal Rule of Civil

Procedure 16(f)).  The defendants' silence since September 11, 2015—in contravention to this

Court's Orders—establishes a willful "pattern of disobedience or noncompliance."  *SEC v.*

*Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C. 2001); *see also Nat'l Hockey League v. Metro.*

*Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (affirming default judgment rather than lesser

sanctions under Rule 37 where "[n]ot only did respondents fail to file their responses on time,

but the responses which they ultimately did file were found by the District Court to be grossly

inadequate").  The defendants have not argued that they did not receive the Court's Orders, and

to the contrary, the SEC sent the last two Minute Orders to the defendants by e-mail.[9]  *Cf.*

---

[9]      *See* Schlegelmilch Decl. Supp. Default J. ¶¶ 8, 10.  Moreover, the Court sent a copy of the September 17, 2015 Minute Order to defendants at their addresses of record.

*Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958) ("Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.").

Notably, this Court has already deemed admitted the SEC's requests for admissions from the three defendants as a result of the defendants' failure to respond to the SEC's motion to compel that discovery. *See* Oct. 1, 2015 Min. Order. This ruling did not prompt the defendants to act. The Court then made clear to the defendants that failure to respond to the Court's Order compelling additional written discovery would result in default judgment.[10] Oct. 27, 2015 Min. Order. The defendants still did nothing. These "numerous warning shots" demonstrate that lesser sanctions would not serve to deter the defendants' future misconduct. *Hollywood Trenz, Inc.*, 202 F.R.D. at 7; *see also Perez*, 583 F. Supp. 2d at 91 (finding other sanctions to be "obviously futile" where the defendants "have failed to respond to plaintiffs' discovery requests in any manner – [defendant] has failed to make any objections or even ask for more time, and his company has not retained counsel to respond on its behalf"). Consequently, the Court finds clear and convincing evidence of misconduct and as the appropriate sanction, enters default judgment against the defendants on all counts.

## B.    Judgment

The SEC seeks injunctive relief enjoining the defendants from future violations of the securities laws, and permanently barring the defendants Xipeng and Feng from acting as officers

---

[10]    In fact, the defendants were cautioned about the risk of default judgment twice in this lawsuit. The Court first cautioned the defendants about the risk of default judgment resulting from defendant CIIC's lack of counsel—a problem that still has not been remedied. Sept. 17, 2015 Min. Order. The Court second cautioned the defendants about the risk of default judgment when the defendants failed to comply with the Court's Order compelling compliance with discovery obligations. Oct. 27, 2015 Min. Order.

or directors of publicly-traded companies.  Pl.'s Mot. at 1–2; Pl.'s Mem. at 18–21.  The SEC also requests the imposition of civil penalties upon all three defendants.  Pl.'s Mot. at 2; Pl.'s Mem. at 19–20.

As noted above, the well-pleaded allegations are deemed admitted for purposes of the liability determination, but the Court must make "an independent determination of the damages." *Carazani*, 972 F. Supp. 2d at 15.  On November 23, 2015, the SEC submitted a declaration and accompanying exhibits as evidence to support its motion for default judgment, *see* Schlegelmilch Decl. Supp. Default J., to which the defendants have not filed a response.  Taking the allegations of the Corrected Complaint as admitted, in conjunction with the SEC's declaration and exhibits, the Court finds that it has sufficient evidence to determine relief without requiring a hearing.[11] *See Carazani*, 972 F. Supp. 2d at 15.  Accordingly, the Court addresses the SEC's three requested forms of relief below.

### 1.   *Injunctive Relief Enjoining the Defendants from Future Violations of the Securities Laws*

The Court is authorized to grant injunctions "commanding compliance with the [federal securities] laws and regulations promulgated thereunder."  *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1317 n.54 (D.C. Cir. 1981) (citing 15 U.S.C. §§ 78u(d), (e)).  "[A]n injunction is appropriate if the court determines there is a reasonable likelihood that [the defendant] will violate the laws again in the future."  *SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C. Cir. 1994).  The Court considers three factors when determining the "reasonable likelihood" of future violations:

---

[11]    Under Federal Rule of Civil Procedure 55(b)(2), defendants who have appeared personally or through counsel "must be served with written notice of the application [of default judgment] at least 7 days before the hearing."  FED. R. CIV. P. 55(b)(2).  The SEC brought this motion pursuant to Federal Rules of Civil Procedure 16(f) and 37(b)(2).  In any event, the defendants had ample notice of the application for default judgment.  The defendants received the October 27 Minute Order cautioning of the possibility of default judgment in the event of noncompliance, *see* Schlegelmilch Decl. Supp. Default J. ¶ 10, and the SEC's motion requesting this relief.  *See* Pl.'s Mot. at 4 (certificate of service showing motion mailed and e-mailed to the defendants); Pl.'s Mem. at 23 (certificate of service showing memorandum in support mailed and e-mailed to the defendants).

(1) "'whether a defendant's violation was isolated or part of a pattern'"; (2) "'whether the violation was flagrant and deliberate or merely technical in nature'"; and (3) "'whether the defendant's business will present opportunities to violate the law in the future.'" *Id.* (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989)). "No single factor is determinative; instead, the district court should determine the propensity for future violations based on the totality of circumstances." *First City Fin. Corp.*, 890 F.2d at 1228.

Here, an injunction is proper because there is a reasonable likelihood that the defendants CIIC, Xipeng, and Feng will commit future violations of the securities laws. First, the violations committed were part of a pattern. The defendants falsified Lei's signature on three separate filings submitted to the SEC and on one letter submitted to NASDAQ. *See* Corr. Compl. ¶¶ 37–46; *see also* Form 10-K at 70; Form 10-Q at 55; Form 10-K/A at 6; NASDAQ Letter at 2; CIIC Admis., Nos. 12–17, 31–32.2, 51–53; Xipeng Admis., Nos. 12–17, 31–32.2, 51–53; Feng Admis., Nos. 12–17, 31–32.2, 51-53. Each of the SEC filings failed to disclose Lei's resignation and the forged signature. Corr. Compl. ¶¶ 42–43; *see also* Form 10-K; Form 10-Q; Form 10-K/A. These actions occurred over the course of six weeks, amounting to a pattern of misconduct rather than a single, isolated incident. *Cf. SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 716 (D.D.C. 1978) (finding that violations were part of an isolated incident where they "principally occurred within a period of a few hours at the closing of the merger").

Second, the defendants deliberately submitted false documents to the SEC and NASDAQ. The defendant Feng admitted that he was aware of Lei's resignation, but nevertheless signed Lei's electronic signature without Lei's authority. *See* Feng Admis., Nos. 6–17, 31–32.2, 51–53. Similarly, the defendants CIIC and Xipeng admitted to knowing that Lei had resigned, that Lei did not sign the filings or letter, and that Lei had not authorized anyone to

sign on his behalf.  *See* CIIC Admis., Nos. 3–17, 31–32.2, 50–53; Xipeng Admis., Nos. 3–17,

31–32.2, 50–53.  At the time of the fraud, CIIC was facing a NASDAQ inquiry and annual SEC-

report filing.  Corr. Compl. ¶¶ 6, 26, 29.  The defendants designed their fraudulent activities, in

part, to avoid bad publicity from the CFO's resignation.  *Id.* ¶ 49.  These deliberate

misrepresentations, made with the intent to prevent the public from knowing the truth regarding

the state of affairs at CIIC, were not merely technical or inconsequential.  *Cf. SEC v. Steadman*,

967 F.2d 636, 648 (D.C. Cir. 1992) (finding activities to be "'merely technical in nature'" where

defendants failed to add a single footnote about potential liability under the Blue Sky laws in

filings) (quoting *First City Fin. Corp.*, 890 F.2d at 1228); *SEC v. Savoy Indus. Inc.*, 587 F.2d

1149, 1165 (D.C. Cir. 1978) (equating technical violations to "inconsequential violations").

    Finally, the defendant CIIC is a registered company under Section 12(g) of the Exchange

Act, and as such, continues to have reporting obligations.  Corr. Compl. ¶ 15.  Thus, the

defendant CIIC's business will present opportunities for it to submit false information to the SEC

in the future.[12]  The defendant Xipeng, as the CEO and Chairman of CIIC, and the defendant

Feng, as Corporate Secretary of CIIC, will likely continue to play central roles in all SEC filings.

*Compare SEC v. E-Smart Techs., Inc.,* No. 11-895, 2015 WL 5952237, at *4 (D.D.C. Oct. 13,

2015) ("[Defendants'] plan to continue developing and commercializing smart-card products of

the type that landed them in hot water in the first place.), *with SEC v. Johnson*, 595 F. Supp. 2d

40, 45 (D.D.C. 2009) (finding where defendant now works at a non-public, private company,

present business opportunities could not provide opportunities for further violation of securities

laws).

---

[12]     Notably, the defendant CIIC has been delinquent in its submissions to the SEC since the filing of the Form 8-K on December 16, 2011.  Corr. Compl. ¶ 10.

The SEC argues that "[r]epeated, deliberate violations are sufficient to warrant a permanent injunction." Pl.'s Mem. at 19. The great weight of authority supports permanent injunctions where an injunction is warranted. *See, e.g., Savoy Indus., Inc.*, 665 F.2d at 1317 n.54 (affirming, apart from one provision, a permanent injunction against the defendant for future violations of certain provisions of the Securities Act and the Exchange Act and the rules thereunder); *E-Smart Techs., Inc.*, 2015 WL 5952237, at *4 (imposing a lifetime injunction on defendants from violating relevant securities laws); *SEC v. Prince*, 942 F. Supp. 2d 108, 154 (D.D.C. 2013) (permanently enjoining the defendant from violating the Accounting Bar where the court found a "'reasonable likelihood'" of future violations) (quoting *Savoy Indus. Inc.*, 587 F.2d at 1168); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 15 (D.D.C. 1998) (entering permanent injunction against the defendants where there is a "reasonable likelihood" of future violations). *But see SEC v. Levine*, 517 F. Supp. 2d 121, 147 (D.D.C. 2007) (awarding a ten-year injunction against violating the securities laws where "future violations are reasonably likely to occur"). Accordingly, the Court will order that the defendants be permanently enjoined from future violations of the securities laws that they have violated here.

### 2.   *Injunction Prohibiting the Defendants Xipeng and Feng from Acting as Officers or Directors of Publicly-Traded Companies*

"The court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine," any person who has violated Section 10(b) of the Exchange Act or the rules and regulations thereunder, "from acting as an officer or director of any issuer that has a class of securities registered pursuant to [15 U.S.C. § 78l] or that is required to file reports pursuant to [15 U.S.C. § 78o(d)] if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer." 15 U.S.C. § 78u(d)(2). "[N]either Congress nor this Circuit has elaborated on the meaning of 'unfitness' in this context" but the Second Circuit has

23

set forth a six-factor framework assessing unfitness to serve and another district court in this

Circuit has set forth a similar nine-factor framework. *E-Smart Techs., Inc.*, 2015 WL 5952237 at

*6 (discussing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995) and *Levine*, 517 F. Supp. 2d at

144).

      The factors of the Second Circuit's framework in *Patel* include: "'(1) the egregiousness

of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the

defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter;

(5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will

recur.'" *Patel*, 61 F.3d at 141 (quoting Jayne W. Barnard, WHEN IS A CORPORATE EXECUTIVE

"SUBSTANTIALLY UNFIT TO SERVE"?, 70 N.C. L. REV. 1489, 1492–93 (1992)).  These *Patel*

factors largely overlap with those enumerated by the *Levine* Court, which outlined the following

factors to be considered: "'(1) the nature and complexity of the scheme; (2) the defendant's role

in the scheme; (3) the use of corporate resources in executing the scheme; (4) the defendant's

financial gain (or loss avoidance) from the scheme; (5) the loss to investors and others as a result

of the scheme; (6) whether the scheme represents an isolated occurrence or a pattern of

misconduct; (7) the defendant's use of stealth and concealment; (8) the defendant's history of

business and related misconduct; and (9) the defendant's acknowledgment of wrongdoing and

the credibility of his contrition.'" *Levine*, 517 F. Supp. 2d at 145 (quoting Jayne W. Barnard,

RULE 10B-5 AND THE "UNFITNESS" QUESTION, 47 ARIZ. L. REV. 9, 46 (2005)).  The goal in both

tests is to ensure that only "likely recidivists" are enjoined from serving as officers and directors.

*E-Smart Techs., Inc.*, 2015 WL 5952237, at *6.

      Although the SEC did not present evidence on each factor set out by these two tests, the

Court is persuaded, based upon the record as a whole, that a bar prohibiting the defendants

Xipeng and Feng as serving from directors and officers of publicly-traded companies is justified. The defendant Xipeng, as the CEO and Chairman of CIIC, knowingly allowed the company to submit fraudulent filings to the SEC and NASDAQ four times as part of a scheme to cover up the resignation of the CFO.  *See* Corr. Compl. ¶¶ 37–47; *see also* Xipeng Admis., Nos. 3–17, 31–32.2, 45, 47, 49.  The defendant Feng, as the Corporate Secretary, actually forged the CFO's signature on these fraudulent filings to further this ruse.  Corr. Compl. ¶¶ 37–49.  Moreover, Feng expressly lied to the Independent Director and the other professionals associated with the company, stating that "Lei had decided to continue as CFO until the Form 10-K was filed" and "the CFO is on sick leave in the hospital."  *Id.* ¶¶ 35–36; Feng Admis., Nos. 26–28.  It is undisputed on the record before the Court that the defendants acted with a high degree of scienter.  *See* CIIC Admis., Nos. 3–17, 31–32.2, 45, 47, 49; Xipeng Admis., Nos. 3–17, 31–32.2, 45, 47, 49; Feng Admis., Nos. 6–17, 31–32.2, 45, 47, 49.  Rather than demonstrate any culpability and intent to reform their behavior, the defendants are now delinquent in their filings to the SEC and have stopped participating in this lawsuit altogether.  Corr. Compl. ¶ 10.  The defendants Xipeng and Feng's central role in this pattern of egregiousness misconduct, and their lack of acknowledgement of wrongdoing necessitates a director-officer bar.

"Before imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness."  *Patel*, 61 F.3d at 142.  While the SEC does not identify any specific justification for imposing a permanent bar rather than a shorter-term prohibition, *id.* (finding that in the absence of past violations, before a lifetime ban is awarded the court must articulate "the factual basis for a finding of the likelihood of recurrence"), this Court has no trouble finding that a permanent bar is appropriate, given the

defendants' blatant disregard of the regulatory process in this country and the lawful orders of this Court. *See, e.g.*, *SEC v. Great Am. Techs., Inc.,* No. 07 Civ. 10694, 2010 U.S. Dist. LEXIS 34830, at *6 (S.D.N.Y. Apr. 8, 2010) (permanently enjoining defendant from violating the securities laws and serving as an officer or director of an issuer of securities after entering default judgment for failure to produce documents and appear at his deposition); *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 422, 424–26 (D. Md. 2005) (permanently enjoining defendant from violating the securities laws and serving as an officer or director of an issuer of securities after entering default judgment where defendant had been "unresponsive for more than a year"); Order, *SEC v. Hollywood Trenz, Inc.*, No. 1:98-cv-01106 (D.D.C. April 30, 2001), ECF No. 66 (permanently enjoining defendant from violating the securities law and serving as an officer or director of a public company after defendant was found to be in default for failure to provide discovery and appear at court-ordered depositions and hearings).  Accordingly, this Court awards the relief requested of a permanent ban prohibiting the defendants Xipeng and Feng from serving as officers or directors "of any issuer that has a class of securities registered pursuant to [15 U.S.C. § 78l] or that is required to file reports pursuant to [15 U.S.C. § 78o(d)] if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer," 15 U.S.C. § 78u(d)(2), commencing from the date of this Order.

### 3.     *Civil Penalties*

The Exchange Act permits district courts to impose civil penalties upon persons who have violated the statute or the rules thereunder.  *See* 15 U.S.C. § 78u(d)(3).  The Act provides for three tiers of penalties and the "amount of the penalty shall be determined by the court in light of the facts and circumstances."  15 U.S.C. § 78u(d)(3)(B)(i).  The SEC requests the imposition of "second-tier" civil penalties, which "shall not exceed the greater of (I) [$75,000]

for a natural person or [$375,000] for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 78u(d)(3)(B)(ii); 17 C.F.R. § 201.1003 & Pt. 201, Subpt. E, Tbl. IV (modifying penalties to adjust for inflation). To warrant "second-tier" civil penalties the violation must involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii). Further, when imposing "second-tier" penalties, the Court "must determine how many violations occurred and how many violations are attributable to each person, as the statute instructs." *Rapoport v. SEC*, 682 F.3d 98, 108 (D.C. Cir. 2012) (vacating and remanding the SEC's order of civil penalties that were imposed for each year the alleged solicitations occurred).

"In determining the amount of the penalty, courts frequently consider such factors as: (1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to demonstrated current and future financial condition." *See, e.g., SEC v. Milan Grp., Inc.*, 124 F. Supp. 3d 21, 25 (D.D.C. 2015).

Each defendant committed at least four fraudulent acts as evidenced by the falsifications of Lei's signature and the misrepresentations regarding Lei's officer status on three separate SEC filings and the letter to NASDAQ. *See SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 288 n.7 (2d Cir. 2013) ("find[ing] no error in the district court's methodology for calculating the maximum penalty by counting each late trade as a separate violation"). Taking the SEC's allegations as true, the fraudulent nature of the defendants' scheme to cover up the resignation of the CFO is sufficient to satisfy the criterion for "second-tier" civil penalties because the violations "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a

regulatory requirement."[13]  *Kenton Capital, Ltd.,* 69 F. Supp. 2d at 17 ("At a minimum,

imposition of a first tier penalty is appropriate for each violation.  If the violation 'involved

fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement,'

second tier penalties should be imposed." (quoting 15 U.S.C. § 78u(d)(3))).  Further, imposing

the maximum amount permitted under the "second-tier" penalties on all three defendants is

appropriate in light of the nature of the defendants' knowing and egregious fraud, and their total

disregard for the Court's Orders in this lawsuit.  *See SEC v. Johnson*, 652 F. Supp. 2d 29, 32–33

(D.D.C. 2009) (holding that the defendant's actions to deceive investors, "including directions to

subordinates to forge signatures and falsify documents," and subsequent obstruction of justice

during his criminal trial were "so flagrant and so serious that measures to achieve maximum

deterrence are appropriate").  Thus, the Court will impose four maximum "second-tier" civil

penalties upon each defendant.  The Court imposes a total penalty of $300,000 upon the

defendant Feng, $300,000 upon the defendant Xipeng, and $1,500,000 upon the defendant CIIC.

## IV.    CONCLUSION

For the foregoing reasons, the SEC's motion for default judgment is granted.  The

defendant CIIC is permanently restrained and enjoined from violating, directly or indirectly,

Sections 10(b) and 13(a) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, and 13a-13

thereunder.  The defendant Xipeng is permanently restrained and enjoined from violating,

directly or indirectly, Section 10(b) of the Exchange Act and Rules 10b-5, 13b2-2, 13a-14

thereunder, from aiding and abetting violations of Sections 10(b) and 13(a) of the Exchange Act

and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder, from controlling, directly or indirectly,

---

[13] The SEC has provided no evidence that the defendants' conduct "resulted in substantial losses or created a significant risk of substantial losses to other persons."  Accordingly, the Court does not consider "third-tier" civil penalties.  *See* 15 U.S.C. § 78u(d)(3)(B)(iii)(bb).

any person who violates Section 10(b) and 13(a) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder, and from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act pursuant to Section 21(d)(2) of the Exchange Act.  The defendant Feng is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act and Rules 10b-5 and 13b2-2 thereunder, aiding and abetting violations of Sections 10(b) and 13(a) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13 and 13a-14 thereunder, and from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act pursuant to Section 21(d)(2) of the Exchange Act.  The defendant CIIC is liable for a civil penalty in the amount of $1,500,000, and the defendants Xipeng and Feng are each liable for a civil penalty in the amount of $300,000.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: May 26, 2016

_____
BERYL A. HOWELL
Chief Judge